JOSEPH H. HARRINGTON
Acting United States Attorney
Eastern District of Washington
Timothy J. Ohms
Assistant U.S. Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Respondent, | ) NO. 2:99-CR-00154-EFS |
| v. | ) United States' Response to |
| JOHN L. CALVERT, | ) Ex Post Facto Issue |
| Petitioner. | ) |

Plaintiff, United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Timothy J. Ohms, Assistant United States Attorney, submits the following response in Ex Post Facto Issue as required in Order ECF 549.

I. BACKGROUND

On June 27, 2016, the Defendant filed a Notice of Filing of Protective Petition to Preserve 28 U.S.C. § 2255 Motion to Vacate Sentence. (ECF No. 533). Through the notice, Defendant indicated that he had filed an application in the Ninth Circuit for leave to file a second or successive motion to vacate his sentence based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). At the same time, the Defendant filed a protective motion in the district court to vacate his conviction in light of *Johnson*. (ECF No. 538).

On February 16, 2017, the Ninth Circuit authorized the Defendant's application to file a second or successive § 2255 motion. The Ninth Circuit indicated that the Defendant had made a prima facie showing that he was entitled to relief under *Johnson* because

United States' Response to Ex Post Facto Issue - 1

*Johnson* announced a new substantive rule that is retroactive on collateral review. (ECF No. 537). *See* 28 U.S.C. § 2255(h)(2).[1] Consistent with the scope of the authorization and the one-year time limit for filing a second or successive § 2255 motion under 28 U.S.C. § 2244(d)(1)(C), the Ninth Circuit authorized the district court "to proceed with the identical section 2255 motion, protectively filed . . . on June 27, 2016." (ECF No. 537).

On March 8, 2017, the government filed a response to the § 2255 motion. (ECF No. 545). The motion was set for hearing on March 15, 2017, without oral argument. (ECF No. 544).

On March 16, 2017, the Court ordered additional briefing on a new issue concerning whether the Defendant's conviction on Count Three raised "any concerns regarding the protections against *ex post facto* laws." (ECF No. 549).

## II. DISCUSSION

On October 26, 1999, the Defendant was indicted on four counts relating to a shootout that occurred in the residence of a former federal witness on June 4, 1998, in retaliation for that witness's participation in a prior federal trial. (ECF No. 1). In Count Three the Defendant was charged with Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).[2] As noted in the Court's order for further briefing,

---

[1] 28 U.S.C. § 2255(h)(2) provides as follows:

(h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeal to contain—

. . . .

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.

[2] The Indictment charged Conspiracy to Retaliate Against a Witness, in violation of 18 U.S.C. § 371 (Count 1); Retaliating Against a Witness, in violation of 18 U.S.C. § 1513(b) (Count 2); Use of a Firearm During a Crime of Violence, in violation of 18

United States' Response to Ex Post Facto Issue - 2

18 U.S.C. § 924(c) was amended in November of 1998 in response to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). *See United States v. O'Brien*, 560 U.S. 218, 232-33 (2010).

The predecessor statute was 18 U.S.C. § 924(c)(1) (1998), which made it illegal to use or carry a firearm during and in relation to any crime of violence or drug trafficking crime. That left open the question of whether *possession* of a firearm during a qualifying offense could constitute "use" under the statute. In *Bailey*, the Supreme Court held that possession alone without active deployment did not constitute "use." *Bailey*, 516 U.S. at 150-51. In response, Congress amended § 924(c)(1) to include possession of a firearm in furtherance of a qualifying offense. 18 U.S.C. § 924(c)(1)(A); s*ee United States v. O'Brien*, 560 U.S. 218, 232-33 (2010). In amending the statute, Congress also added two material facts that, if alleged and found by a jury, would increase the penalty applicable to the statute. Originally, a violation of 18 U.S.C. § 924(c)(1) carried a sentence of five years imprisonment, which was to be consecutive or "in addition to the punishment provided for such crime of violence or drug trafficking crime." 18 U.S.C. § 924(c) (1998), *amended by* 18 U.S.C. § 924(c) (2002). The amended version kept the five-year term of imprisonment for the offense in its basic form, but provided for seven years imprisonment if the firearm was brandished, and ten years imprisonment if the firearm was discharged. 18 U.S.C. § 924(c)(1)(A)(ii), (iii) (2002).

The relevant portions of the two versions of the statute and of Count 3 of the Indictment are set forth below:

Effective: October 11, 1996, to November 12, 1998

| Statute | Offense | Penalty Provision |
|---|---|---|
| 18 U.S.C. § 924(c)(1) | Whoever, **during and in relation to any crime of violence** or drug trafficking crime (including a crime of violence or drug trafficking crime which provides | —shall, in addition to the punishment provided for such crime of violence or |

U.S.C. § 924(c)(1)(A) (Count 3); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g) (Count 4). (ECF No. 1).

United States' Response to Ex Post Facto Issue - 3

| | for an enhance punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, **uses or carries a firearm**— | drug trafficking crime, be sentenced to imprisonment for five years. |

Effective: November 13, 1998, to November 1, 2002

| Statute | Offense | Penalty Provision |
|---|---|---|
| 18 U.S.C. § 924(c)(1)(A) | Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, **during and in relation to any crime of violence** or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, **uses or carries a firearm**, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime— | —shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . . (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years. |

Indictment (Count Three):  Filed October 26, 1999

| Statute | Offense | Material Facts |
|---|---|---|
| 18 U.S.C. § 924(c)(1)(A) | On or about June 4, 1998, in the Eastern District of Washington, JOHN L. CALVERT . . . did knowingly and willfully **use and carry a firearm**, that is a Browning 9 mm semi-automatic pistol, **during and in relation to a crime of violence**, to wit, Retaliating Against a Witness, in violation of 18 U.S.C. § 1513(b), | which firearm was discharged in commission of the offense |

As indicated by the above tables, the substantive conduct alleged in the Indictment matches the offense conduct in the predecessor statute that was in effect at the time of the offense. The Indictment did not allege possession as an alternative means. Thus, the offense alleged in the Indictment is consistent with the offense set forth in both the predecessor statute and the amended statute. However, the Indictment did allege discharge of a firearm as a material fact. That material fact was superfluous in an indictment based on the predecessor statute, but was relevant to sentencing under the

United States' Response to Ex Post Facto Issue - 4

amended statute. The Indictment also alleged a violation of Subsection (A) of
§ 924(c)(1). In the predecessor statute, Subsection (1) was not divided into subsections.

In analyzing the Indictment under the predecessor statute, the allegation of material fact is surplusage—that is, it is unnecessary to an offense under the predecessor statute. *See United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002). The inclusion of a surplus allegation does not render a conviction invalid:

> [a] court may ignore independent and unnecessary allegations in an indictment. Allegations in the indictment that are not necessary to establish a violation of a statue are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime.

*Id.*, quoting *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994). *See also Ford v. United States*, 273 U.S. 593, 602 (1927) (holding that the indictment's inclusion of an erroneous allegation that the defendant's conduct was in violation of a treaty could be ignored as a "useless averment."); *United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir. 2001) (allegation that defendant consented to a burglary was suprlusage.). If a defendant considers a surplus allegation to be objectionable, he or she may move to strike it under Fed. R. Crim. P. 7(d). In the present case, the surplus allegation does not materially impact the allegation as analyzed under the predecessor statute.

Similarly, the fact that the statutory citation in the Indictment references a subsection that was not delineated in the predecessor statute does not render the Indictment invalid. *See Williams v. United States*, 168 U.S. 382 389 (1897).

> It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force. The endorsement on the margin of the indictment constitutes no part of the indictment and does not ad to or weaken the legal force of its averments. We must look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute.

*Id. See also United States v. Hutchinson,* 312 U.S. 219, 229 (1941); *United States v. Gordon*, 641 F.2d 1281, 1287 (9th Cir. 1981) ("The reasoning of *Williams* . . . has been

United States' Response to Ex Post Facto Issue - 5

consistently followed by this court."). This principle is embodied in the Federal Rules of Criminal Procedure:

> Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.

Fed. R. Crim. P. 7(c)(2). As a result, the Indictment alleged an offense under both the predecessor statute (18 U.S.C. § 924(c)(1) (1998)) and the amended statute (18 U.S.C. § 924(c)(1)(A) (2002)). The Defendant was convicted by a jury that was properly instructed on the elements of the offense and does not have a claim of "actual innocence" to the offense as described in *Schlup v. Delo*, 513 U.S. 298 (1995).

Although the Defendant's conviction would stand under either statute, the sentence imposed for Count 3 was greater than the sentence authorized at the time that the Defendant committed the offense. The retroactive application of a statute that expands the definition of a crime or that increases the punishment for a crime violates the *ex post facto* clause. *See Collins v. Youngblood*, 497 U.S. 37, 42-44 (1990). However, the *ex post facto* violation should only extend to that portion of the sentence that was greater than that authorized at the time of the offense.[3] Thus,

---

[3] *See, e.g., Carmell v. Texas*, 529 U.S. 513 (2000). There, the Supreme Court remanded a case for further proceedings based on an *ex post facto* application of a Texas state law that authorized a conviction for certain sexual offenses based on a victim's testimony alone. *Id*. at 552. In doing so, the Supreme Court noted that the state had argued that there had, in fact, been evidence corroborating the victim so that the defendant would have been convicted under the old standard as well as the new one. *Id*. at n. 4. On remand, the Texas state court determined that there was sufficient corroborating evidence to sustain the conviction based on the statute in effect at the time of the offense. *Carmell v. State of Texas*, 26 S.W.3d 726 (Tex. App. 2000). Thereafter, the defendant petitioned for collateral review arguing, in part, that the Texas court should have dismissed the case

United States' Response to Ex Post Facto Issue - 6

if the Court has jurisdiction to consider the *ex post facto* issue, it should be able to resentence the Defendant based on the statute in effect at the time of the offense.

In the present case, the Court derives its jurisdiction for the order issued by the Ninth Circuit on February 16, 2017, pursuant to 28 U.S.C. § 2244(b)(3). Since this is a second or successive § 2255 motion, the order was based on a prima facia showing that the Defendant was entitled to relief because of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). In this case, that new rule of constitutional law was the holding that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was void for vagueness under *Johnson v. United States*, 135 S. Ct. 22551 (2015). At the time of the order, many courts were applying this holding to a similar residual clause contained in the Sentencing Guidelines. USSG §4B1.2(a)(2) (amended August 1, 2016). The order issued by the Ninth Circuit was expressly limited to this issue. The *ex post facto* issue identified by the Court is beyond the scope of this order; moreover, it is outside the scope of the Defendant's motion and cannot be raised

---

rather than considering whether there had been sufficient corroborating evidence under the legal standards in place at the time of the offense. *Carmell v. Director, TDCJ-CID*, 2006 WL 543990. The Texas Court of Appeals held that its use of the legal standard in effect at the time of the offense to find corroboration was not inconsistent with the mandate. *Id*. at *7. The defendant filed a motion for review in federal court under 28 U.S.C. § 2254, which was denied. *See Carmell v. Quarterman*, 292 Fed. Appx. 317 (2008). The defendant obtained a certificate of appealability and appealed the denial of his motion. *Id*. The Fifth Circuit Court of Appeals affirmed, holding that the Supreme Court found an *ex post facto* violation only to the extent that the defendant's convictions could not be corroborated by other evidence. *Id*. at *325. The Supreme Court denied certiorari to review this application of its holding. *Carmell v. Quarterman*, 29 S.Ct. 2831 (2009).

United States' Response to Ex Post Facto Issue - 7

through a motion pursuant to 28 U.S.C. § 2255 at this time because of procedural default, untimeliness, and because it is not within the limited scope available for second or subsequent motions under § 2255(h).

Initially, the Defendant forfeited the issue by failing to raise it at sentencing or on appeal. As a general rule, with the exception of claims of ineffective assistance of counsel, claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice or actual innocence. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). This is a higher standard than the plain error standard used on direct review for claims not raised at trial and results in a procedural default. *United States v. Frady*, 456 U.S. 152, 166 (1982). The table below lists the hearings, appeals, and collateral motions relevant to the Defendant's sentence through which he had the opportunity to raise this issue:

| Date | Proceeding | Attorney | Record | *Ex Post Facto* Issue Raised |
|------|------------|----------|--------|------------------------------|
| 07/16/01 | Sentencing Hearing # 1 | John T. Rodgers | ECF 247 | No |
| 07/16/01 | Defendant's Appeal # 1 | Kenneth K Watts | ECF 249, 250 | No |
| 02/12/03 | Sentencing Hearing # 2 | Kenneth K. Watts | ECF No. 311 | No |
| 02/24/03 | Defendant's Appeal # 2 | Kenneth K. Watts | ECF No. 318; 75 Fed.Appx. 663 | No |
| 08/19/04 | Sentencing Hearing # 3 | Richard D. Wall | ECF 348, 349 | No |
| 09/20/04 | Government's Appeal | Richard D. Wall | ECF No. 354; 142 Fed.Appx. 969 | No |
| 11/30/06 | Sentencing Hearing # 4 | Richard D. Wall | ECF No. 431, 433 | No |
| 12/06/06 | Defendant's Appeal # 3 | Richard D. Wall | ECF No. 435; 511 F.3d 1237 | No |
| 09/18/08 | § 2255 Motion # 1 | Pro Se | ECF No. 455 | No |
| 07/16/13 | Deemed § 2255 Motion # 2 | Pro Se | ECF No. 483 | Yes, as to Sentencing Guidelines |

| 07/28/14 | Writ of Error Coram Nobis | Pro Se | ECF No. 505, 507 | Yes, as to Sentencing Guidelines |
|---|---|---|---|---|
| 01/20/15 | Deemed § 2241 Motion | Pro Se | ECF No. 516, 517 | No |
| 06/03/16 | § 2255 Motion # 3 | Alison K. Guernsey | ECF No. 538 | No |

The Defendant did not raise this issue during the course of four separate sentencing hearings with three different counsel and three direct appeals through two different counsel. The Defendant cannot show cause for his failure to raise the issue other than that it was overlooked. By analogy, counsel's failure to recognize or properly calculate filing deadlines is not "cause" in the context of requests for equitable tolling of the filing deadlines set forth in 28 U.S.C. § 2255. *See Sirhan v. Galaza*, 76 Fed. Supp. 3d 1073, 1097-98 (C.D. Cal. 2015) (citing examples).

Although the Defendant did raise an *ex post facto* issue in his second § 2255 motion filed on July 16, 2013, it was limited the Sentencing Guidelines used by the Court to calculate his advisory sentencing range. (ECF No. 483). Although an *ex post facto* challenge to the Guidelines used at sentencing raises a constitutional issue under *Peugh v. United States*, 133 S.Ct. 2072 (2013), this Court denied the Defendant's motion as untimely ("Accordingly, the July 16, 2013 Motion is untimely."). (ECF No. 484 at 5). The current *ex post facto* claim would be similarly untimely under 28 U.S.C. § 2255(f) if raised by the Defendant.

A one-year period of limitation applies to initial motions for collateral review under 28 U.S.C. § 2255(f). The grounds for an initial motion include those at issue here—i.e., that "the sentence was imposed in violation of the Constitution or laws of the United States" or that "the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). The one-year period of limitation runs from the latest of the following:

(1) The date that the judgment became final;

United States' Response to Ex Post Facto Issue - 9

(2) In cases where a defendant is prevented from filing the motion by unconstitutional governmental action, the date on which the impediment was removed;

(3) In cases in which the Supreme Court has recognized a new right and made it retroactive to cases on collateral review, the date on which the right asserted was recognized by the Supreme Court;

(4) The date on which the facts supporting the claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In the present case, the Defendant's final judgment was his Third Amended Judgment entered on December 6, 2006. (ECF No. 433). Although there were two later amended judgments, those were not the result of a resentencing and were intended to correct clerical mistakes. As the Court noted when it found the Defendant's "deemed" motion pursuant to 28 U.S.C. § 2255 to vacate the Fourth Amended Judgment untimely, although it was filed within one year of the entry of that judgment, "[t]he Fourth Amended Judgment was not entered as a result of a resentencing but rather was entered to correct a clerical mistake." *United States v. Calvert*, 2013 WL 4726927 *2 (E.D.Wash. 2003). (ECF No. 484 at 3). Thus, the Defendant would be time-barred from challenging his sentence at this time under 28 U.S.C. § 2255 based on an *ex post facto* challenge.

Moreover, even if the Defendant's current § 2255 were deemed "timely" based on the date of the Fifth Amended Judgment filed on October 22, 2015, (ECF 529), that motion did not raise an *ex post facto* challenge to the Defendant's sentence. This is significant because the one-year period of limitation is "issue specific." *See Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012) ("Therefore, we hold that AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis."); *Capozzi v. United States*, 768 F.3d 32 (1st Cir. 2014) (applying standard to § 2255 and citing *Mardesich*.) Thus, the issue is time-barred under 28 U.S.C. § 2255(f).

United States' Response to Ex Post Facto Issue - 10

Although there are "equitable tolling" provisions that allow a defendant to bring a motion outside of the time limit established by statute, the Defendant does not meet the criteria for equitable tolling. A court can equitably toll the limitations period for filing a § 2255 motion if the defendant was prevented from filing the petition by external forces beyond his control, and he or she otherwise diligently pursued the issues raised. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also Sirhan v. Galaza*, 76 Fed. Supp. 3d 1073, 1097-98 (C.D. Cal. 2015). Here, no external forces acted upon the Defendant to prevent him from raising the *ex post facto* issue identified by the Court.

Similarly, a credible claim of actual innocence can provide an equitable exception to the one-year statute of limitations imposed by § 2255 or its analogue for state petitions filed in federal court under 28 U.S.C. §§ 2244. *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011). In *Gage v. Chappell*, 793 F.3d 1159 (2015), the Ninth Circuit considered the extent to which a claim of actual innocence, as described in the pre-AEDTA case of *Schlup v. Delo*, 513 U.S. 298 (1995), provides an independent gateway past the successive petition restrictions of 28 U.S.C. § 2244(b)(2). *Gage v. Chappell*, 793 F.3d at 1166-67. The court noted that petitions brought by state prisoners under § 2244(b)(2) were analogous to successive petitions brought by federal prisoners under 28 U.S.C. § 2255(h). *Id.* at 1165 n.4. The court reasoned that "[w]ere *Schlup* to provide a gateway past § 2244(b)(2)(B), the diligence requirement in § 2244(b)(2)(B)(i) would lose all effect." *Id.* at 1168. The court then drew a distinction between actual innocence claims brought as a first petition in violation of the one-year filing period, and claims brought through a successive petition based on information that was available at the time of the first petition. *Id.* at 1169. The court pointed to the Supreme Court's comparison of the requirements for establishing a miscarriage of justice exception under first petitions brought by state prisoners verses second and successive petitions brought by the same prisoners. *Id.* (analyzing *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013)). There, the Supreme Court determined that the actual innocence exception embodied in *Schlup*

survived intact only as to a prisoner's first petition, and that a more stringent requirement of diligence was imposed on successive petitions:

> But Congress did not simply incorporate the miscarriage of justice exception into §§ 2244(b)(2)(B) and 2254(e)(2). Rather, Congress constrained the application of the exception. Prior to AEDPA's enactment, a court could grant relief on a second-or-successive petition, then known as an "abusive" petition, if the petitioner could show that a fundamental miscarriage of justice would result from a failure to entertain the claim. . . . . Section 2244(b)(2)(B) limits the exception to cases in which "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and the petitioner can establish that no reasonable factfinder "would have found [her] guilty of the underlying offense" by "clear and convincing evidence." <u>Congress thus required second-or-successive habeas petitioners attempting to benefit from the miscarriage of justice exception</u> to meet a higher level of proof ("clear and convincing evidence") and <u>to satisfy a diligence requirement that did not exist prior to AEDPA's passage</u>.

*Id*. (emphasis added) (internal quotations and citations omitted).

> Sections 2244(b)(2)(B) and 2254(e)(2) thus <u>reflect Congress' will to modify the miscarriage of justice exception with respect to second-or-successive petitions</u> and the holding of evidentiary hearings in federal court. These provisions do not demonstrate Congress' intent to preclude courts from applying the exception, unmodified, to "the type of petition at issue here"—an untimely <u>first</u> federal habeas petition alleging a gateway actual-innocence claim. . . . The more rational inference to draw from Congress' incorporation of a modified version of the miscarriage of justice exception in §§ 2244(b)(2)(B) and 2254(e)(2) is simply this: In a case not governed by those provisions, i.e., a <u>first petition</u> for federal habeas relief, the miscarriage of justice exception survived AEDPA's passage intact and unrestricted.

*Id*. at 1934 (emphasis added) (internal citation omitted). Based on *McQuiggin*, the Ninth Circuit held that "*Schlup* does not abrogate § 2244(b)(2)(B)(i)." *Gage v. Chappell*, 793 F.3d at 1169. Thus, although a petition based on an assertion of actual innocence can survive the timing limitations for first petitions, they cannot be brought through a second or successive petition unless "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." 28 U.S.C.

United States' Response to Ex Post Facto Issue - 12

§ 2244(b)(2)(B)(i). This requires more than a factual assertion that the factual or legal basis for the claim was overlooked—rather, it requires that it "could not have been discovered" through due diligence. *See also, Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc) (analyzing the actual innocence standard in the context of a second or successive application by a state prisoner under § 2244(b)(2) based on alleged *Brady* violations involving *previously undisclosed* evidence).

In the present case, the *ex post facto* issue identified by the Court does not give rise to a credible claim of actual innocence concerning an underlying conviction under 18 U.S.C. § 924(1) (1998). As discussed previously, the Defendant was convicted based on an Indictment that contained the elements of an offense under that statute. An assertion of actual innocence would be limited to the material fact of the discharge of a firearm because that was not a material fact under the predecessor statute. Thus, the material fact, though alleged and found beyond a reasonable doubt by a jury, would have had no effect on an offense based on the predecessor statute.

Therefore, although the Defendant is guilty of the an offense under 18 U.S.C. § 924(c)(1) (1998), he is serving a sentence that is in excess of the maximum authorized by statute for Count 3. However, all of the facts and legal authority for this claim were readily accessible to the Defendant and his counsel at the time of his various sentencing hearings, appeals, and initial § 2255 motion. Thus, the Defendant cannot meet the standard articulated in *Gage* with regard to state-based petitions under § 2244(b)(2)(B)(i) that the facts supporting the claim or claims could not have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f)(4). Since the Defendant cannot meet the due diligence requirement, he does not fall within the exception for equitable relief based on a claim of actual innocence. Moreover, since Congress expressly included prison sentences that exceeded that statutory maximum for the offense as a ground for relief for initial § 2255 motions and expressly omitted them as a ground for relief for second or successive motions, Congress anticipated that defendants with sentences imposed in violation of the Constitution or laws of the United States would be without a

United States' Response to Ex Post Facto Issue - 13

remedy under § 2255 if they failed to raise the issue in accordance with the established procedures and limitations.

In addition to issues of timeliness and procedural default, the *ex post facto* issue identified by the Court would not meet the criteria for a second or successive § 2255 motion based on the limited grounds provided in 28 U.S.C. § 2255(h). It would meet the criteria under 28 U.S.C. § 2255(a) for a first motion as a "sentence [ ] imposed in violation of the Constitution or laws of the United States." However, Congress expressly limited that ground to initial motions brought in a timely manner under 28 U.S.C. § 2255(f). That is not a ground for relief for a second or successive § 2255 motion. In the present case, the issue identified by the Court is neither newly discovered evidence nor a new constitutional rule. As a result, the issue would not provide the Defendant a basis to seek relief through a second or successive § 2255 motion.

Moreover, although the *ex post facto* issue raised by the Court undoubtedly affected the way the Defendant's sentence was structured, it did not necessarily impact the total punishment imposed by the Court pursuant to USSG § 5G1.2 and 18 U.S.C. § 3553. A table that sets forth the sentences imposed in this case is included in Appendix A. To reach the total punishment of 270 months in the Third Amended Judgment imposed on November 30, 2006, the Court imposed a sentence at the statutory maximum of 60 months for Count 1 to run consecutive to a 90-month sentence imposed for Counts 2 and 4. Counts 2 and 4 carried maximum penalties of 240 months and 120 months respectively. Thus, the total sentence imposed was within the combined maximum penalties for Counts 1, 2, and 4 of 420 months. The Court was not required to run the penalty for Count 1 consecutive to the penalties for Counts 2 and 4 and, presumably, did so in order to achieve the total punishment that it deemed appropriate under 18 U.S.C. § 3553(a). The Court could have achieved a total punishment of 270 months without regard to the sentence imposed for Count 3 and could have imposed a shorter amount of total punishment even with the 120-month sentence imposed for Count 3. Thus, it is not

clear from the record that the Defendant received a longer total sentence as a result of the *ex post facto* violation identified by the Court.

Finally, the Court cannot resentence the Defendant without a jurisdictional basis to do so. Prior to November 1, 1987, Federal Rule of Criminal Procedure 35(a) permitted a court to "correct an illegal sentence at any time." After that date, the amended rule limited the court's ability to correct "clear error" within 14 days after sentencing. Fed. R. Crim. P. 35(a). Thereafter, the procedural mechanisms for correcting a sentence are limited to direct appeal or collateral attack pursuant to 28 U.S.C. § 2255(a). The limitation imposed by Rule 35(a) is jurisdictional in nature. *See United States v. Aguilar-Reyes*, 653 F.3d 1053 (9th Cir. 2011).

> A court generally may not correct or modify a sentence of imprisonment once it has been imposed. 18 U.S.C. § 3582(c). A court may modify such a sentence only 'to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.' 18 U.S.C. § 3582(c)(1)(B). Federal Rule of Criminal Procedure 35(a) states: 'Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.'
> This and other circuit courts have held that <u>the fourteen-day deadline is jurisdictional, thus divesting the district court of the power</u> to amend the sentence after fourteen days.

*Id*. at 1055 (emphasis added).

Similarly, the gatekeeping rules for second or successive motions pursuant to 28 U.S.C. § 2255 are generally considered to be jurisdictional—that is, they limit the power of the district court to consider a second or successive motion absent a certification from the court of appeals. *See Terres v. Senkowski*, 316 F.3d 147, 151-52 (2d Cir. 2003); *United States v. Key*, 205 F.3d 773, 774-75 (5th Cir. 2000); *Rogers v. Artuz*, 524 F. Supp. 2d 193, 198 (E.D.N.Y. 2007) ("Without an authorization from the appropriate court of appeals, a federal district court does not have subject matter jurisdiction over a second or successive habeas petition.") (citing *Uniting States v. Gallegos*, 142 F.3d 1211 (10th Cir. 1998). In the present case, the Defendant's motion is before this Court under 2255(h)(2) because the Ninth Circuit certification was based on whether or not *Johnson* applies to

the Defendant's case. However, in light of *Beckles v. United States*, 137 S.Ct. 886 (2017), there is no "new rule of constitutional law" that applies to the Defendant. As a result, the certification granted by the Ninth Circuit is moot and should not be seen as a means of reviewing new issues. The Ninth Circuit has held that the presence of a constitutional violation alone does not allow a defendant to bypass the gatekeepers to a second habeas petition. *Gage v. Chappell*, 793 F.3d at 1166.

Even if the Court may have an inherent authority to act on some issues *sua sponte* in some manner that is outside of the procedural barriers of 28 U.S.C. § 2255, that authority cannot properly be exercised in a way that is counter to the purposes of § 2255 or that undermines its gatekeeping functions and jurisdictional limitations. *See United States v. Williams*, 790 F.3d 1059, 1074 (10th Cir. 2015) (analyzing *Calderon v. Thompson*, 523 U.S. 538, 554 (1998):

> In *Calderon*, the Supreme Court concluded the Ninth Circuit recalled its mandate because of voting irregularities related to the first petition and that it did not consider the claims or evidence provided in the petitioner's successive motion. *Id*. The Supreme Court explained that the Ninth Circuit reconsidered and "acted on the first application [for habeas relief] rather than a successive one." *Id*. As a result, the Supreme Court held that the Ninth Circuit indeed acted sua sponte, and therefore AEDPA's procedural bars on second or successive petitions were not directly applicable.
> Nonetheless, the Court reversed the Ninth Circuit's sua sponte decision, explaining that <u>even when a court acts sua sponte, its must still "exercise its discretion in a manner consistent with the objects of" AEDPA</u>.
> . . .

*Id*. (emphasis added).

In the present case, the issue raised by the Court is not based on either new evidence or a new constitutional rule and does not meet the grounds for relief for a second or successive § 2255 motion. It is time-barred—and, indeed, this Court previously found an analogous Guideline-based *ex post facto* issue asserted by the Defendant in a successive § 2255 motion to be time-barred. The Defendant has also forfeited the claim through procedural default, and he cannot meet the criteria for equitable relief through equitable tolling or an assertion of actual innocence because the claim is not based on

United States' Response to Ex Post Facto Issue - 16

new information. All of the facts and legal theories upon which such a claim would be based were accessible at the time of the Defendant's initial sentencing hearing in July of 2001 and throughout all of his successive sentencing hearings and appeals. The Defendant has been represented by competent counsel throughout. The issue has not been certified by a court of appeal and is outside the scope of relief under Federal Rule of Criminal Procedure 35(a). In addition, the sentence for Count 3 was part of a larger, total sentence imposed pursuant to USSG § 5G1.2 and 18 U.S.C. § 3553 and could have been achieved without regard to the sentence imposed for Count 3. Thus, although the structure of the sentence was impacted by the *ex post facto* issue identified by the Court, the record is unclear about the degree to which it impacted the total punishment imposed for the combined counts based on the Sentencing Guidelines and the statutory factors under 18 U.S.C. § 3553(a). Without certification of the issue by the Ninth Circuit, this Court should not take action that is outside the scope of the substantive and procedural limitations imposed by 28 U.S.C. § 2255. This is particularly true because sentencing issues are specifically addressed in § 2255(a) and are part of dual procedural structure that distinguishes between first and second motions filed under the statute.

DATED: March 30, 2017

                            Respectfully submitted,

                            JOSEPH H. HARRINGTON
                            Acting United States Attorney

By: _/s/ Timothy J. Ohms_____
      Timothy J. Ohms
      Assistant U.S. Attorney

I hereby certify that on March 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Alison K. Guernsey.

          /s/ Timothy J. Ohms
TIMOTHY J. OHMS
Assistant U.S. Attorney